kaw

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|                              |    |                        |
|------------------------------|----|------------------------|
| UNIVERSAL ENGRAVING, INC.,   | )  |                        |
|                              | )  |                        |
| Plaintiff,                   | )  |                        |
|                              | )  |                        |
| vs.                          | )  |                        |
|                              | )  | Case No. 07-2427-JAR   |
|                              | )  |                        |
| FREDERICK DUARTE, PH.D.      | )  |                        |
|                              | )  |                        |
| Defendant.                   | )  |                        |
| _____ | ) |                        |

## MEMORANDUM AND ORDER

Before the Court is plaintiff Universal Engraving, Inc.'s ("UEI") Motion for Summary

Judgment on Count I of the Complaint (Doc. 60).  Defendant Dr. Frederick Duarte has not filed a

response to date and the 23 day response time has expired.[1]   A party that fails to file a response

to a timely filed motion waives the right to respond unless that party can show excusable

neglect.[2]  If a party fails to file a response, then the motion is considered and decided as an

uncontested motion, and ordinarily will be granted without further notice."[3]  In determining

whether summary judgment is warranted against a non-responding party, the court cannot simply

grant the motion as uncontested under D. Kan. Rule 7.4, rather the court must look at the merits

of the case and decide whether summary judgment is appropriate.[4]  For the reasons detailed

---

[1] D. Kan. R. 6.1(d)(2).

[2] D. Kan. R. 7.4.

[3] D. Kan. R. 7.4

[4] *Carlsen v. Perfume Pizazz, Inc.*, No. Civ.A. 05-2081-KHV, 2006 WL 435704, *1 (D. Kan. Feb. 21, 2006).

below, plaintiff's motion is granted.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]  A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[6]  An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[7]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[8]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[9]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[10]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[11]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of

---

[5]FED. R. CIV. P. 56(c).

[6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7]*Id.*

[8]*Id.* at 251–52.

[9]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[10]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[11]*Id.*

trial from which a rational trier of fact could find for the nonmovant."[12]  If the moving party

bears the burden of proof at trial, "it must point to evidence in the record that supports its version

of all material facts and demonstrate an absence of a genuine issue of material facts."[13]  "If the

moving party does not meet this burden, the court must deny summary judgment even if the

nonmoving party does not produce any opposing evidence."[14]  If the moving party does meet its

burden, the nonmoving party must offer more than mere allegations and denials to create a

genuine issue of material fact.[15]  When examining the underlying facts of the case, the Court is

cognizant that it may not make credibility determinations or weigh the evidence.[16]  Furthermore,

the record is to be viewed in the light most favorable to the nonmoving party.[17]  Therefore, the

Court will assume the nonmoving party's evidence to be true, determine all doubts in the

nonmovant's favor, and draw all reasonable inferences in the nonmovant's favor.

**Factual Background**

Much of the factual makeup of this action is discussed in the Court's Preliminary

Injunction Order (Doc. 17) published on October 16, 2007.  For purposes of this motion, only

those facts occurring subsequent to the entry of the Order are stated.  Where the facts are not

controverted, the facts as alleged and supported by the record are taken as true.

Since October 16, 2007, Dr. Duarte has filed a notice of default, stating that he can no

---

[12]*Id.*

[13]*Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting).

[14]*Id.*

[15]*Id.*

[16]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[17]*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

longer afford to defend against this action.  Dr. Duarte's attorney withdrew from this action on

May 2, 2008.  Subsequently, Dr. Duarte's attorney entered a limited entry of appearance to be

present for Dr. Duarte's deposition.  The Court granted the motion, but required Dr. Duarte's

attorney to file a motion to withdraw immediately preceding the deposition.  No such motion has

been filed.  Dr. Duarte was deposed on June 2, 2008.

In his deposition, Dr. Duarte admitted that there was an employment agreement between

he and UEI and that he violated this contract with UEI by accepting employment with a

competitor, Metal Magic, Inc.  Dr. Duarte has admitted that while employed at UEI, he accepted

a position with Metal Magic to serve as Research Director, the same position he served with

UEI.  He also has admitted that after accepting the position with Metal Magic, he installed a

flash drive in UEI's computer but has since misplaced the flash drive.  Dr. Duarte also testified

that he does not intend to continue in the engraving business even though he has had substantial

contacts with Metal Magic since the Preliminary Injunction Order.

**Discussion**

The first issue, as UEI posits, is whether the employment agreement between Dr. Duarte

and UEI is enforceable.  At issue are the temporal and geographical scopes of the employment

agreement.  In its Preliminary Injunction Order, the court determined that the world-wide

geographical scope of the employment agreement was valid.  The Court, however, questioned

the temporal scope of the non-compete clause.  The employment agreement provides that Dr.

Duarte cannot work in a similar trade for five years.  In its Preliminary Injunction Order, the

Court stated:

> [I]n light of the evidence adduced at the hearing, the Court is
> constrained to find that the five year restriction is unreasonable.

But in light of the issues and the injury at stake for UEI if Dr.
Duarte is not enjoined, the Court is inclined to amend the
restriction to two years.  [*Bruce D. Graham, M.D., P.A. v. Cirocco*,
69 P. 3d 194, 200 (Kan. App. 2003) (explaining that the Kansas
Supreme Court has upheld the modification of a non-compete
covenant).]  Such a restraint in this matter is reasonable, in light of
both Kansas case law and the [*Weber v. Tillman*, 913 P.2d 84, 90
(Kan. 1996) (upholding a two year restriction); *Uarco, Inc. v.
Eastland*, 584 F. Supp. 1259, 1263 (D. Kan. 1984) (same).]  broad
geographical scope of the agreement.  And, because the field of
engraving builds upon past technology and past developments, two
years is a reasonable period of time for the wave of technology in
this field to change.[18]

UEI now argues that the five year ban is reasonable because, essentially, the stakes are

higher.  UEI states that because Dr. Duarte either cannot find or refuses to turn over the flash

drive.  UEI has no alternative but to assume that whatever information is stored on the flash

drive will be turned over to Metal Magic.  UEI further argues that if Dr. Duarte truly intends to

avoid the engraving business, the five year ban does not substantially burden his ability to work.

"Contracts should be presumed legal, and the party challenging the contract has the

burden to prove it is illegal."[19]  "Courts have the duty to sustain the legality of a contract in

whole or in part when the contract was fairly entered into and it is reasonably possible to do so,

rather than seeking loopholes and technical legal grounds for defeating the contract's intended

purpose."[20]  "The paramount public policy is that freedom of contract should not be interfered

with lightly."[21]  A non-compete clause ancillary to an employment contract is valid and

---

[18](Doc. 17 at 18.)

[19]*Wichita Clinic, P.A. v. Louis*, 185 P.3d 946, 951 (Kan. App. 2008).

[20]*Id.* (quoting *Idbeis v. Wichita Surgical Specialists, P.A.*, 112 P.3d 81, 90-91 (Kan. 2005).

[21]*Id.* (quoting *Idbeis*, 112 P.3d at 91).

enforceable if the restraint is reasonable.[22]  A court, however, may modify a contract to ensure

that the temporal scope of the agreement is reasonable.[23]

Here, the Court has considered the additional facts that leads UEI to believe that its

information may be used by Metal Magic: Dr. Duarte has continued his contacts with Metal

Magic, he has admitted to taking information from UEI's computer system and now, he states

that he cannot find the flash drive with the information.  This evidence suggests that Dr. Duarte's

continued discussions with Metal Magic may be in violation of the Preliminary Injunction Order.

Nonetheless, a five year prohibition is substantially beyond the scope of temporal provisions that

have been approved in Kansas.[24]  The Court finds no reason the change the two year prohibition,

for it is appropriate.

The Court further considers whether Dr. Duarte breached the employment agreement as

amended by the Court.  To state a claim for breach of contract, UEI bears the burden of showing

(1) the existence of a contract, (2) sufficient consideration to support the contract, (3) its ability

and willingness to perform, (4) Dr. Duarte's breach of that contract, and (5) damages resulting

from that breach.[25]

Here, there is no doubt that there exists a contract between the parties; Dr. Duarte has

admitted this much.  He has also admitted that he received consideration and that he breached

---

[22]*Weber v. Tillman*, 913 P.2d 84, 89 (Kan. 1996).

[23]*Graham v. Cirocco*, 69 P.3d 194, 200 (Kan. App. 2003) (explaining that the Kansas Supreme Court has upheld the modification of a non-compete covenant).

[24]*See Weber*, 913 P.2d at 90-91 (reasoning that a two-year restraint is not reasonable); *Wichita Clinic, P.A. v. Louis*, 185 P.3d 946, 955 (Kan. App. 2008) (concluding that a three-year provision was reasonable); *Graham*, 69 P.3d at 199 (finding two-year term reasonable).

[25]*Weatherby v. Burlington N. & Sante Fe Ry.*, 209 F. Supp. 2d 1155, 1163, (D. Kan. 2002) (citation omitted).

the employment agreement by accepting employment with Metal Magic.  Finally, UEI has

suffered damages for the accumulated attorney fees and for any proprietary information revealed

to Metal Magic.  As such, the Court finds as matter of law that summary judgment is warranted

on the merits.

**IT IS THEREFORE ORDERED THAT** plaintiff Universal Engraving, Inc.'s Motion

for Summary Judgment (Doc. 60) is **granted**.

**IT IS FURTHER ORDERED THAT** the employment agreement is amended to restrict

Dr. Duarte's employment with a competitor world-wide for two years.

**IT IS SO ORDERED.**

Dated this __10th__ day of October, 2008.

_S/ Julie A. Robinson_
**Julie A. Robinson**
**United States District Judge**